HALSEY WRIGHT V. L. BROETER, DISTRICT JUDGE.

No. A-1012. Decided August 30, 1946.
(196 S. W., 2d Series, 82.)

*Chandler, Barber & Trimble* and *Sidney P. Chandler*, all of Corpus Christi, for relator.

In refusing to proceed to try this contested election suit, the district judge acted arbitrarily and contrary to the provisions of law and he should be required to proceed to try said case upon the service which the record shows has been had, under Article 3152, upon respondent Sain, the contestee herein. Cain v. State, 20 Texas 355; Iles v. Walker, 132 Texas 6, 120 S. W. (2d) 418; Southern Pac. Ry. Co. v. Sorey, 104 Texas 476, 140 S. W. 334.

*Lloyd & Lloyd,* of Alice, for respondent.

On the proposition that Article 3152 was repealed by Article 3130, if not expressly by reason of the conflict between them, see Texas & Pac. Ry. Co. v. Mosley, 103 Texas 79, 124 S. W. 90; Garrison v. Richardson, 107 S. W. 861; Lee v. Whitehead, 182 S. W. (2d) 744.

MR. JUSTICE HICKMAN delivered the opinion of the Court.

■ By this original proceeding Halsey Wright seeks to compel by mandamus the Honorable L. Broeter, Judge of the 79th Judicial District, which district includes Jim Wells County, to proceed to the trial of a case filed by him in that court. Under authority of Article 1734, Revised Statutes 1925, this court has jurisdiction to hear the cause and grant the writ, if warranted by the record. Petitioner shows satisfactory reasons for not filing this action in the Court of Civil Appeals in the first instance.

The facts are undisputed and may be briefly stated as follows: H. T. Sain, one of the respondents, is Sheriff of Jim Wells

County and was a candidate for renomination in the Democratic primary election held on July 27, 1946. Relator Halsey Wright was the opposing candidate. On the face of the election returns Sain received a majority of the votes and was declared the nominee for the office by the Democratic Executive Committee of Jim Wells County. On August 2, 1946, the executive committee issued a certificate of nomination in favor of Sain. Four days later relator filed suit in the district court of that county contesting the certificate of nomination alleging, among other things, that he had received at least 150 more votes than respondent Sain, but was deprived of the benefit of all the votes cast for him through frauds and illegalities in certain named election precincts. Judge Broeter called a special session of the court to convene on August 15 and set the case for a hearing on that date. The district clerk prepared a copy of the grounds of the contest together with the notice of the date set for hearing and a regular citation to be served upon Sain. These instruments, together with a copy of the order providing for such hearing and a copy of the order calling the special term of court, were placed in the hands of a constable, who executed the citation by leaving copies of the above-named instruments with Ollie Fuller, Deputy Sheriff, a person over the age of sixteen years, at the usual place of business of the contestee, that being the Sheriff's office in the court house of Jim Wells County. Another citation, including copies of the above-named instruments, was placed in the hands of the same constable for personal service upon Sain, but after diligent search by the constable and the relator Sain could not be found or his whereabouts ascertained.

On the day appointed, August 15, the case was called for trial but the judge, being of the opinion that there had been no legal service of process upon Sain, declined to hear the case. Instead he reset same for trial on August 23 with the requirement that personal service be had upon Sain before the case proceed to trial. It is made to appear that the case has been reset for September 3rd subject to process being served upon Sain.

Judge Broeter has filed an answer to relator's petition in which he presents reasons for his conclusion that the law requires personal service upon Sain, but in that connection he states that he recognizes that it is proper for the court of last resort to determine the legal question presented, and that he will gladly and promptly obey the opinion and mandate of this court whatever our conclusion may be. The question presented,

then, is not one of an arbitrary refusal of a trial judge to discharge the duties of his office, but is purpely a question of the construction of statutes.

In 1938, in the case of Iles v. Walker, Chief Justice, et al, 132 Texas 6, 120 S. W. (2d) 418, it was suggested that it would be wise and proper for the legislature to make some provision for serevice other than personal service in election contest cases where the contestee cannot be located. Thereafter, the 47th Legislature, page 467) in 1941, enacted House Bill No. 203, amending Article 3152, Revised Statutes of Texas, to meet that situation. That article, as amended, together with the emergency clause, reads as follows:

"In State, district, county, precinct, or municipal offices, the certificate of nomination issued by the president or chairman of the nominating convention or chairman of the county executive committee shall be subject to review, upon allegations of fraud or illegality, by the District Court of the county in which the contestee resides, or the Judge of said Court in vacation, or in any county in which contestee was candidate for office; provided, that such allegations are filed in said Court within ten (10) days after the issuance of said certificate; and when said allegations are so filed, or the appeal from the decision of the executive committee is perfected, the Judge of the District Court shall set same down for hearing, either in termtime or vacation, at the earliest practicable time, not to exceed ten (10) days; and a copy of said grounds of contest, together with the notice of the date set for hearing shall be prepared and issued by the District Clerk and *be served upon the contestee* five (5) days before the hearing *by* said Court or Judge, and the parties to said contest shall have the right to summon witnesses; *provided, however, that service upon the contestee of a copy of said grounds of said contest, together with the notice of the date set for hearing, may be had by service upon the agent or attorny of such person, or by leaving the same with some person over the age of (16) years at the usual place of residence or business of the contestee, or his last address.* The said Court or Judge shall determine said contest at the earliest time practicable. A certified copy of the judgment of said Court or Judge shall be transmitted by the clerk thereof to the officers charged with the duty of providing the official ballot, and the name of the candidate in whose favor said judgment shall be rendered shall be printed in the official ballot for the general election.

"For good cause shown, supported by affidavit of either party the trial of said contest may be postponed one time for not exceeding five (5) days.

"Sec. 2. The. fact that under existing laws regulating primary election and nomination contests, it is necessary to serve the contestee in person, which may be thwarted ·by the ·contestee's leaving his usual place of residence or place of business in order to avoid service, creates an emergency * * *." (underscore ours).

Service was had upon Sain in compliance with the terms of that article.

The legislature at a later date in the same session enacted House Bill No. 857, (47th Leg., p. 1400) Section 5 of which reads as follows:

"Sec. 5. Article 3130, Revised Civil Statutes, 1925, is hereby amended so as to hereafter read as follows:

"Article 3130.

"The District Court shall have original and exclusive jurisdiction of all contests for nominations growing out of primary elections. Any candidate desiring to contest the declared result of any primary election in which he was a candidate, shall file his suit in the District Court within ten (10) days from the date of declaring the result by the executive committee, *and process shall be served upon the opposite party as in other civil suits, except that the return day thereof shall be fixed by the District Judge. However, upon the filing of any such suit, the contestant shall forthwith deliver, or cause to be delivered, a true copy of his petition or complaint to the opposite party.* The filing of the suit shall be immediately called to the attention of the District Judge by the Clerk of said Court. If the District Court be then in session, the Judge thereof shall set the said contest for trial at a date not more than ten (10) days from date of the filing of said contest. If the District Court be not in session at said time, the Judge thereof shall order a special term of said Court to be convened not later than ten (10) days from the filing of such contest for the hearing of same, and in either case the said contest shall have precedence over all other matters. The contestee shall file his answer within five (5) days from the filing of such suit, but either party, or both, shall have the right to amend before announcing ready for trial and set up additional causes of action or matters of defense, as the

case may be. Any further changes in the pleadings shall be within the sound discretion of the Court. In the trial of such cause, the trial judge shall have wide discretion as to matters of pleading, procedure and admissibility of evidence, the purpose of this article being to subserve the ends of justice, rather than strict compliance with technical rules of pleading, procedure, and evidence. The District Court shall have the exclusive power to determine the regularity of the election in the county or any precinct, and the legality or illegality of any ballot involving question of law, or mixed question of law and fact. When the issues involved in such contest have been adjudicated, the District Court shall cause its decision to be certified to the county clerk of the county." (Underscore ours.)

The emergency clause to that Act recites:

"Sec. 13. The fact that the provisions of this Act are necessary to correct defects in the election laws of this State constitutes an emergency * * *."

These two enactments of the legislature will be referred to as the first and second acts, respectively. Both took effect on the same day.

■ There is no better statement of the rule of law applicable in the construction of two acts of the same session of the legislature than that made by Justice Wheeler in the early case of Cain v. State, 20 Texas 355. This language is taken from that opinion:

"* * * The rule is, that in the construction of acts of the same session, the whole must be taken and construed as one act, and to make a latter provision repeal a former, there must be an express repeal, or an irreconcilable repugnancy between them; and then the latter will control. * * *

"* * * nothing short of expressions so plain and positive as to force upon the mind an irresistible conviction, or absolute necessity, will justify a court in presuming, that it was the intention of the legislature that their acts passed at the same session, should abrogate and annul one another. The decent respect due a co-ordinate department of the government, would seem to forbid that such a presumption be indulged by the court. As we had occasion to say in Neill v. Keese, 'it would not be a reasonable mode of construing acts of the legislature, so to construe them as to make one act repeal another passed at the same session. It cannot be supposed that it was their intention that acts thus passed should abrogate and repeal one another.' 5 Tex. 33."

■ That rule has been consistently followed. McGrady v. Terrell, 98 Texas 427, 84 S. W. 641; Southern Pacific Co. v. Sorey, 104 Texas, 476, 140 S. W. 334; Garrison v. Richards, 107 S. W. 861, error dismissed; 39 Texas Jur., Statutes, Section 78, and authorities cited. In order to uphold both acts the first act may be regarded as an exception to the second. Cain v. State, supra. Under the rule requiring that the two acts be construed together as one, we are not concerned with the question of whether or not any provisions in one may be found to be repugnant to corresponding provisions in the other. Our concern in this case is limited to a consideration of whether or not there is repugnancy between the particular provisions of the acts with reference to service of process. If it should be granted, as contended, that certain provisions of the second act are repugnant to corresponding provisions of the first, it would not follow that the whole of the first be stricken down, for the second act would repeal the first act only to the extent of the repugnancy. Any provisions in the first act not repugnant to provisions of the second act would remain as valid portions of the two acts considered as one. As stated in Garrison v. Richards, supra, "Where two acts are passed at the same session of the Legislature they should be construed together as one act, and, if possible, so that both may stand. McGrady v. Terrell, 98 Texas 427, 84 S. W. 641; Lewis' Suth. on Stat. Const., Sec. 268. But where the two are repugnant and irreconcilable, the one approved last repeals the other *to the extent of the repugnancy.*" (Underscore ours).

■ Our inquiry is thus narrowed down to this: Are the provisions of the first act with respect to service in irreconcilable conflict with the provisions of the second act with respect to service? Our conclusion is that they are not. Referring to those acts copied above, it will be observed that the first act provides that a copy of the grounds of contest together with the notice of the date of hearing shall be "served" upon the contestee. This is followed by a provision that "service" upon the contestee may be had by "leaving the same with some person over the age of sixteen years at the usual place of residence or business of the contestee." The second act also requires that process be "served" upon the opposite party "as in other civil suits" and further provides that the contestant "shall forthwith deliver, or cause to be delivered, a true copy of his petition or complaint to the opposite party." There is no irreconcilable conflict between these provisions. Each provides for service upon the contestee. One provides, in effect, that leaving copies of certain papers with a person over sixteen years of age, at the usual place of business of

the contestee, shall constitute service. The other does not expressly provide to the contrary. We should presume that the word "service" as used in the second act means the same as when used in the first act, and that therefore the requirements of service contained in the second act are met by a compliance with the requirements of the first act.

■ From a consideration of these acts as a whole, particularly in the light of the emergency clause to the first act, it is manifest that the legislature intended that a contest of the legality of a nomination at a primary election should not be thwarted by the contestee's leaving his place of residence or business so that personal service can not be had upon him. That intention is so clear that nothing short of positive provisions to the contrary should operate to nullify it, and such provisions are not found in the second act.

On oral argument a suggestion was made that the two acts under review do not deal with the same subject matter; that article 3152 should be construed as being limited to cases contesting the validity of the certificate of nomination issued by executive committees based alone upon fraud or illegality of such committees as distinguished from fraud and illegality in the manner of conducting the election. We find upon an inspection of the briefs that no such contention is made therein. On the contrary, the respondent's whole theory is that the two acts cover the same subject matter and are in irreconcilable conflict, with the result that the first was repealed by the second. It seems clear to us that the two acts are in pari materia. While the first one does speak of the contest of the certificate of nomination for fraud or illegality, it does not limit the fraud or illegality to acts of the committee itself. It will be noted further that in the emergency clause of that act, copied above, the proceedings are referred to as nomination contests and the caption refers to them under the same designation. Besides, the second act, article 3130, by express language repeals article 3152 as amended by the 40th Legislature and the 42nd Legislature. It does not repeal that article as amended by the 47th Legislature. Clearly, the legislature would not have provided for the repeal of acts not thought to be in pari materia with the act containing the repealing provision. All of these statutes have to do with primary election contests and, as indicated above, our sole question is whether there is irreconcilable conflict between the provisions of the two acts with respect to service of process.

Having determined that those provisions are not necessarily repugnant, it is ordered that the writ of mandamus issue as prayed for directing the Honorable L. Broeter, District Judge, to proceed to trial of the contest without delay. The prayer of relator that Judge Broeter be directed to proceed to try the cause without consideration of any answer that may hereinafter be filed by the contestee Sain, is denied.

In cases of emergency this court is authorized to deny to a litigant the right to file a motion for rehearing. Sterling v. Ferguson, 122 Texas 122, 53 S. W. (2d) 753; Stanford v. Butler, 142 Texas 692, 181 S. W. (2d) 269; Westervelt v. Yates, 145 Texas 1, 194 S. W. (2d) 395; Rule of Civil Procedure No. 515. This is a proper case for the exercise of that authority.

Accordingly, it is ordered that the judgment here rendered shall become final immediately, and that no motion for rehearing will be entertained.

Opinion delivered August 30, 1946.