

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 28, 1951

Hon. Allan Shivers
Governor of Texas
Austin, Texas

Opinion No. V-1199

Re: Effect of Senate Bill No. 236
(Insurance Code), if it becomes
law, on the gross premium re-
ceipts taxes of insurance com-
panies as levied in House Bill
285 (The Omnibus Tax Law),

Dear Governor Shivers:

Your request for an opinion states that a question has
been raised as to a possible conflict between Senate Bill 236,
Acts 52nd Legislature, known as the Insurance Code, and House
Bill 285, Acts 52nd Legislature, the Omnibus Tax Bill. You point
out that House Bill 285 levies the usual gross premium tax on
insurance companies and re-enacts the ten per cent increase
passed by the Fifty-first Legislature at its First Called Session,
while Senate Bill 236 specifically provides that "Domestic insur-
ance companies shall not be required to pay any occupation or
gross receipt tax except as otherwise provided by this code."
You then call our attention to House Concurrent Resolution No.
179, and ask the following question:

"In the event I sign Senate Bill No. 236 would the
tax levied in House Bill No. 285 be a valid and enforce-
able tax?"

Senate Bill No. 236, the Insurance Code, as finally passed
by the Legislature, is very voluminous, consisting of 517 legal type-
written pages, and is evidently the result of months of research. It
purports to expressly repeal 243 separate articles of the Revised
Civil Statutes of Texas, 1925, and 96 separate acts of the Legisla-
ture, and in addition, all laws or parts of laws in conflict with the
Code. Your request was received by us on June 20, 1951, and by
reason of the short time available to us before you must act on
this measure on or before June 28, 1951, it is impossible for us
to check this code in detail. We have, therefore, been compelled
to confine our discussion to the one specific question you have pre-
sented.

The Insurance Code (S.B. 236) passed the Senate on April 10, 1951, by a viva voce vote, and passed the House on May 23, 1951, by a record vote of 103 yeas and 9 nays. It appears from the certificate of the Secretary of the Senate and the Chief Clerk of the House that Senate Bill 236 was corrected by House Concurrent Resolution No. 179 on June 7, 1951. The evident purpose of the Resolution was (1) to place in the code the provisions of five bills adopted by the Fifty-second Legislature prior to the passage of the code, some of which were then effective and some of which were not, and (2) to remove from the code three separate statutes (Articles 7064, 7064a, and 4769) levying gross premium receipt taxes and strike the enumeration of these three statutes from the "express repeal" section (Section 4) of the code. The obvious purpose in removing the taxing statutes from the code was by reason of the fact that there was some doubt as to whether the taxing statutes would be a revenue bearing measure and, if so, whether it would be invalid under the provisions of Article III, Sec. 33 of the Constitution of Texas, the bill having originated in the Senate.

Of course, under the Constitution (Art. III, Sec. 30) "No law shall be passed except by bill," but based on the "enrolled bill rule" we think the procedure followed by the Legislature to accomplish the removal of the tax statutes from the Code was valid. Ellison v. Texas Liquor Control Board, 154 S.W.2d 322 (Tex. Civ. App. 1941, error ref.). In other words, a duly enrolled, authenticated, and approved bill imports absolute verity and constitutes a conclusive record of adoption of the act, as enrolled, in accordance with constitutional requirements. Blessing v. City of Galveston, 42 Tex. 641 (1875); Williams v. Taylor, 83 Tex. 667, 19 S.W. 156 (1892); Jackson v. Walker, 121 Tex. 303, 49 S.W.2d 693 (1932); King v. Terrell, 218 S.W. 42 (Tex. Civ. App. 1920, error ref.). This is so even where, as in the Ellison case, the certificates show correction of a bill by resolution prior to being enrolled.

The act under review in the Ellison case had attached thereto the certificate of the Chief Clerk of the House:

"I hereby certify that H.B. No. 373 was passed by the House on March 20, 1941, by the following votes: yeas 113, nays 16."

The certificate of the Secretary of the Senate appearing thereunder read:

"I hereby certify that House Bill No. 373 was
passed by the Senate with amendments on April 17,
1941, by the following vote: ayes 29, nays 0; and that
the Senate receded from the amendments to House
Bill 373 as shown by Senate Resolution No. 125 on
May 7, 1941, by the following votes: yeas 24, nays 2."

In overruling the contention that the act was passed
in violation of the Constitution, the Court said:

"The 'enrolled bill rule' is applied by the courts
in Texas, which, as stated in Texas Jurisprudence, Vol.
39, p. 121, is as follows: 'In the review of enactments,
the Courts of Texas have long since adopted the so-called
"enrolled bill rule", to the effect that a duly authenticated,
approved and enrolled statute imports absolute verity
and is conclusive that the act was passed in every respect
according to constitutional requirements. In other words,
according to the settled rule an act passed by the Legis-
lature, signed by the proper officers of each house, ap-
proved by the Governor, or passed notwithstanding, and
filed in the office of the Secretary of State, constitutes
a conclusive record of the passage of the act as enrolled.
As against this record resort may not be had to a proc-
lamation of the Governor, to the terms of the bill as
originally introduced or amendments thereto, to the jour-
nal of the Legislature, nor to parol evidence for the pur-
pose of impeaching or invalidating the law.' The opinion
of Justice Gaines in Williams v. Taylor, 83 Tex. 667, 19
S.W. 156, make it unnecessary, in this opinion, to show
why the journals of the Legislature or Senate will not be
received to impeach an enrolled bill. See also King v.
Terrell, Comptroller, Tex. Civ. App., 218 S.W. 42. The
evidence relied upon by appellants as establishing that
the bill, as passed by the House of Representatives, was
passed by the Senate with amendments depends upon en-
tries in the journals of the House. To receive such evi-
dence would be contrary to the 'enrolled bill rule'.

" . . . H. B. No. 373 is therefore duly enrolled, and
recourse to the journals of the House or the Senate to
impeach its validity will not be permitted. It shows
upon its face that it received the required number of
votes in each house. And while the Secretary of the
Senate saw fit to certify with respect to the Senate's
having receded from the 'amendments', in so doing
he was not discharging any constitutional duty. But

if his certificate to such purport is made by him in discharge of his legal duty, it must be conclusively presumed that the Senate receded in a timely and proper way. And, as appellees state: 'No evidence behind the final constitutional indicia of passage would be permitted to show that the Senate had not properly "receded" from its "amendments".' There are states in which the 'enrolled bill rule' does not prevail. But the law in this respect in Texas is too well settled to admit of any question. We will not therefore discuss authorities to the contrary from other states. Therefore we overrule appellants' contention that H.B. 373 shows on its face that it was passed in violation of the constitution, or that it was so shown by the journals." (Emphasis ours.)

In our opinion the Ellison case is controlling here, and the Insurance Code (S.B. 236), as enrolled, not containing the three taxing statutes (Arts. 7064, 7064a, and 4769), nor expressly repealing them, left such statutes in force and effect, unless such statutes are repealed by implication as a result of the provisions in the Code providing that "domestic insurance companies shall not be required to pay any occupation or gross receipt tax except as otherwise provided by this Code," and "no occupation tax other than herein imposed shall be levied by the State or any County, City or town, upon any insurance organization herein subject to the occupation tax in proportion to its gross premium, or its agents," and that "the occupation tax imposed by this chapter shall be the sole occupation tax which any company doing business in this State under the provisions of this Chapter shall be required to pay."[1]

The Code (Arts. 5.49, 5.68, 8.24(e), 9.23, 15.18, 19.11) does in fact levy certain gross premium taxes against insurance companies to be paid into various special funds of the Board of Insurance Commissioners for enforcement purposes. While it may well be that some of these levies are occupation taxes, none are levied for general revenue purposes and hence the levy thereof in Senate Bill 236 does not constitute "raising revenue" within the meaning of Section 33 of Article III of the Constitution of Texas. This section does not apply to bills which may incidentally raise revenue. Day Land & Cattle Co.,v. State, 68 Tex. 526, 4 S.W. 865 (1887); James v. Gulf Insurance Co., 179 S.W.2d 397 (Tex. Civ. App. 1944), reversed on other grounds 143 Tex. 424, 185 S.W.2d 966 (1945).

---

1/  Articles 4.01 and 4.06 of the Insurance Code.

The provisions quoted above appear to be in conflict with the provisions of Articles 7064, 7064a, and 4769, all of which are part of the so-called "Omnibus Tax Law." If this is so, then the question arises as to whether these provisions and the general repealing clause in the Code could operate as a repeal by implication of Articles 7064, 7064a, and 4769, or any of the provisions thereof. We do not think so.

The rule is well established that repeals by implication are not favored. Townsend v. Terrell, 118 Tex. 463, 16 S.W.2d 1063 (1929). The Insurance Code (S.B. 236) and the Omnibus Tax Act (H.B. 285) were both passed at the same session of the Legislature and "nothing short of expressions so plain and positive as to force upon the mind an irresistible conviction, or absolute necessity, will justify a court in presuming that it was the intention of the Legislature that their acts passed at the same session, should abrogate and annul one another." Wright v. Broeter, 145 Tex. 142, 196 S.W.2d 82 (1946).

For still an additional reason we believe the taxing statutes (Arts. 7064, 7064a, and 4769) have not been repealed and that the gross premium taxes levied by H.B. 285 will be effective if approved by you. The Insurance Code (S.B. 236) finally passed the Legislature on May 23, 1951. The Omnibus Tax Bill (H.B. 285) was finally passed by the Legislature on June 6, 1951, by a vote of 116 yeas and 17 nays in the House, and 29 yeas and 2 nays in the Senate. This latter act (H.B. 285) expressly amended Articles 7064, 7064a, and 4769 so as to increase the tax levied therein. (Sections XV, XVIII, and XXI of the Omnibus Tax Bill.)

Thus it is to be observed that H.B. 285 is the latest expression of the Legislature, and to the extent of any conflict as between H.B. 285 and those provisions of the Insurance Code, above quoted, H.B. 285 will prevail. This accords with the well established rule that the latest expression of the Legislature will prevail, and the statute last passed will prevail over a statute passed prior to it, irrespective of whether the prior statute takes effect before or after the later statute. Cain v. State, 20 Tex. 355; Wright v. Broeter, 145 Tex. 142, 196 S.W.2d 82 (1946); People v. Kramer, 328 Ill. 512, 160 N.E. 60 (1928); Newbauer v. State, 200 Ind. 118, 161 N.E. 826 (1928); State v. Schaumburg, 139 La. 470, 89 So. 536 (1921); State v. Marcus, 34 N.M. 378, 281 Pac. 454 (1929); 1 Sutherland Statutory Construction (3rd Ed. 1943) 484, Sec. 220; Att'y Gen. Op. V-990 (1950) and authorities there cited.

Further, in the event of conflict between the Code and the tax statutes as amended by House Bill 285, the provisions of the tax statutes will prevail for still another reason. One of the purposes expressed in the title of the Code is the preservation of substantive law existing prior to the adoption of the Code. Repeal of tax statutes is not a subject expressed in the title. A bill upon one subject may not be passed under a title expressing another. Therefore any provision of the Code that may be said to have as its purpose the repeal of the tax statutes is invalid. Texas Constitution, Article III, Section 35; Gulf Insurance Company v. James, 143 Tex. 424, 185 S.W.2d 966 (1945).

In view of the foregoing authorities, we do not believe that the Insurance Code (S.B. 236), if it becomes law, will affect the validity or enforceability of the gross premium receipts taxes levied by House Bill 285, and your question is accordingly answered in the negative.

## SUMMARY

Senate Bill 236 (The Insurance Code) adopted at the Regular Session of the Fifty-second Legislature, if it becomes law, will not affect the validity and enforceability of the gross premium receipts taxes levied in House Bill 285, Acts 52nd Legislature (Omnibus Tax Law).

Yours very truly,

PRICE DANIEL
Attorney General

Charles D. Mathews
First Assistant

APPROVED:

W. V. Geppert
Taxation Division

Price Daniel
Attorney General

Everett Hutchinson
Executive Assistant

CDM:EH:b