

# The Attorney General of Texas

January 14, 1982

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Neal Pfeiffer
Criminal District Attorney
Bastrop County
P. O. Box 753
Bastrop, Texas    78602

Opinion No. MW-424

Re:    Provision   of   street
cleaning services by a general
law  city  and  assessment  of
fees therefor

Dear Mr. Pfeiffer:

You request our opinion as to whether a city incorporated under the general law statutes of the state of Texas can provide street cleaning services and charge fees therefor. Additionally, you request an opinion as to whether such a city can charge such fees to all residents, when the street cleaning services are restricted to the downtown area of the city.

The city of Elgin, Texas, proposes to provide a street cleaning service for the downtown area only and charge fees to all residents for such service.

With respect to your first question, general law cities have only such powers as are granted by statute or by necessary implication therefrom. See Payne v. Massey, 196 S.W.2d 493, 495 (Tex. 1946); Attorney General Opinion H-796 (1976). This is in contrast to the broad powers of home rule cities, which may exercise any power incorporated in their charters that is not denied by the constitution or by statute. V.T.C.S. art. 1176.

General law cities have "...exclusive control and power over the streets ... of the city ... to ... clean and otherwise improve said streets..." V.T.C.S. art. 1016. However, no statutory authority for general law cities to charge fees for such service obtains unless such provision is found in article 4477-8, section 13, V.T.C.S.

Section 13 states in pertinent part:

> Any public agency or any county may offer solid waste disposal service to persons within its boundaries, may require the use of such service by any or all such persons, may charge fees therefor, and may establish said service as a utility

> separate from other utilities within its boundaries....

The term "public agency" is defined in article 4477-8, section 3(e), V.T.C.S., to include "any city as defined herein." The word "city" means any incorporated city or town in the state, whether operating under general law or under its home rule charter. V.T.C.S. art. 4477-8, §3(d). Therefore, a city such as Elgin is a public agency under article 4477-8, V.T.C.S., empowered to offer a "solid waste disposal service" to persons within its boundaries and charge fees therefor.

The statutory definition of "solid waste" refers to the definition found in article 4477-7, V.T.C.S., the Solid Waste Disposal Act. V.T.C.S. art. 4477-8, §3(h).

Prior to the 1977 amendments to section 2 of article 4477-7, V.T.C.S., that section defined "solid waste" and "municipal waste" as follows:

> (5) 'solid waste' means all putrescible and nonputrescrible discarded or unwanted solid materials, including municipal solid waste...

> (6) 'municipal solid waste' means solid waste resulting from or incidental to municipal, community, trade, business and recreational activities, including garbage, rubbish, ashes, street cleanings, dead animals, abandoned automobiles, and all other solid waste other than industrial solid waste.

In 1977, the Sixty-fifth Legislature passed two bills amending article 4477-7, section 2, V.T.C.S. Senate Bill No. 764, along with other changes, excised the phrase "including municipal solid waste" from the definition of "solid waste." The definition of "municipal solid waste" was changed only by substituting the word "commercial" for the words "trade, business."

On the other hand, in Senate Bill No. 1139 the definitions of "solid waste" and "municipal solid waste" have the same wording as the statute prior to the 1977 amendments. That is, the definition of solid waste specifically includes municipal solid waste.

Both Senate Bill No. 764 and Senate Bill No. 1139 were finally passed by the house on May 13, 1977. The senate concurred in house amendments to both bills on May 17, 1977. The governor signed Senate Bill No. 764 on May 30, 1977. It became effective on August 29, 1977.

The governor signed Senate Bill No. 1139 on June 16, 1977. Its effective date was set at September 1, 1977.

Two acts on the same subject passed by the same session of the legislature must be reconciled and construed as one act. Wright v. Broeter, 196 S.W.2d 82, 85 (Tex. 1946). If one act expressly repeals the other or there is an irreconcilable repugnancy between them, the provision approved last will prevail. Id. at 85.

The Texas Supreme Court has stated that:

> ...nothing short of expressions so plain and positive as to force upon the mind an irresistible conviction, or absolute necessity, will justify a court in presuming, that it was the intention of the legislature that their acts passed at the same session, should abrogate and annul one another.

Cain v. State, 20 Tex. 355, 361 (1857).

Accordingly, Senate Bill No. 764 and Senate Bill No. 1139 must be read together and reconciled, if possible. The acts are not irresistibly repugnant.

The definition of "solid waste" in Senate Bill No. 764 states:

> (5) 'solid waste' means all putrescible and nonputrescible discarded or unwanted solid materials, including garbage, refuse, sludge from a waste treatment plant or air pollution control facility, and other discarded material, including solid, liquid, semisolid or contained gaseous material resulting from industrial commercial, mining and agricultural operations and from community activities...

This definition is broad enough to include the items in the definition of municipal solid waste. Consequently, street cleanings are within the ambit of "solid waste." (Obviously, there is no clear legislative intent to exclude "municipal solid waste" from the term "solid waste"). It follows that a "solid waste disposal service" as used in article 4477-8, section 13, V.T.C.S., may include the service of street cleaning under these definitions.

You also ask if fees can be charged to all the residents of the city if street cleaning services are provided for only a certain section of the town, specifically the downtown area which presumably is in greatest need of street cleaning.

Under our reading of section 13, such a practice is precluded. The statute plainly states that a public agency may offer solid waste disposal service to persons within its boundaries and may require the use of such service by any or all such persons and may charge fees therefor.   By use of the phrase "such persons" reference is made to the persons to whom the service is offered.   Thus, only those persons to whom the service is offered, that is, who may actually have the street abutting their home or business cleaned, may be charged a fee.

### S U M M A R Y

General law cities may provide street cleaning services and charge fees therefor under article 4477-8, section 13, V.T.C.S.  Only persons who receive street cleaning services may be charged such fees.

Very truly yours,

M A R K   W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Douglas Fraser
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Douglas Fraser
Rick Gilpin
Jim Moellinger